UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

BRUCE HOON CHOI,

                Plaintiff,

          v.

HOYT DE LEON CORP. and WILLIAM J.
VELEZ,

                Defendants.

 

HOYT LIVERY, INC., incorrectly sued herein as
HOYT DE LEON CORP., and WILLIAM J.
VELEZ,

                Third Party Plaintiffs,

          v.

LINCOLN LIMOUSINE SERVICES, INC. and
FELIX A. RODRIGUEZ,

                Third Party Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-4445 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Bruce Hoon Choi commenced the above-captioned action on February 15, 2019

in the Supreme Court of the State of New York, Queens County, seeking damages for personal

injuries sustained by him as a result of a four-vehicle accident that occurred on February 17,

2016.  (Verified Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-2.)  On

August 2, 2019, Defendants/Third Party Plaintiffs Hoyt Livery, Inc. and William J. Velez

removed this matter to the United States District Court of the Eastern District of New York.

(Notice of Removal, Docket Entry No. 1.)  On January 15, 2021, Defendants/Third Party Plaintiffs filed a third-party complaint against Third Party Defendants Lincoln Limousine Services, Inc. and Felix A. Rodriguez (the "Third Party Defendants") seeking contribution and common law indemnification.  (Third Party Compl., Docket Entry No. 23.)

Third Party Defendants now move for summary judgment as to all claims asserted against them by Defendants/Third Party Plaintiffs.[1]  For the reasons set forth below, the Court denies the motion for summary judgment.

## I.  Background

The following facts are undisputed unless otherwise noted.[2]

### a.  Factual background

On February 17, 2016, Plaintiff was operating a motor vehicle on the Whitestone Bridge in Queens, New York when he stopped his vehicle for three to four seconds after getting in an accident with another vehicle.[3]  (Third Party Pls.' 56.1 ¶¶ 6, 7, 10.)  Plaintiff felt an impact to the rear of his vehicle followed by two other rear impacts.  (Id. ¶ 10.)  Third Party Defendant Rodriguez was operating a Lincoln town car owned by Third Party Defendant Lincoln

---

[1] (Not. of Third Party Defs.' Mot. for Summ. J. ("Third Party Defs.' Mot."), Docket Entry No. 42; Third Party Defs.' Mem. in Supp. of Third Party Defs.' Mot. ("Third Party Defs.' Mem."), Docket Entry No. 42-15; Defs./Third Party Pls.' Mem. in Opp'n to Third Party Defs.' Mot. ("Third Party Pls.' Opp'n"), Docket Entry No. 43-14; Third Party Defs.' Reply Mem. in Supp. of Third Party Defs.' Mot. ("Third Party Defs.' Reply"), Docket Entry No. 44.)

[2] (Third Party Defs.' Rule 56.1 Stmt. of Undisputed Material Facts in Supp. of Third Party Defs.' Mot. ("Third Party Defs.' 56.1"), Docket Entry No. 42-1; Defs./Third Party Pls.' Rule 56.1 Stmt. of Undisputed Material Facts ("Third Party Pls.' 56.1"), Docket Entry No. 43-15; Third Party Defs.' Resp. to Third Party Pls.' 56.1 ("Third Party Defs.' 56.1 Resp."), Docket Entry No. 44-1; Defs./Third Party Pls.' Reply to Third Party Defs.' 56.1 ("Third Party Pls.' 56.1 Reply"), Docket Entry No. 43-16.)

[3] The first vehicle apparently fled the scene, and its driver is not involved in this matter. (Third Party Defs.' 56.1 ¶ 13.)

Limousine and was traveling approximately half a car length behind Plaintiff when he first observed Plaintiff's vehicle proceeding at a speed of forty to forty-five miles per hour on the bridge.  (*Id.* ¶ 11.)  Rodriguez applied his brakes after Plaintiff came to a sudden stop but eventually contacted Plaintiff's vehicle in the rear.[4]  (*Id.* ¶¶ 8, 12.)  Defendant/Third Party Plaintiff Velez was operating a vehicle for Defendant/Third Party Plaintiff Hoyt Livery and saw that the vehicle operated by Rodriguez was stopped because it was involved in an accident.  (*Id.* ¶ 13.)  Velez "attempted to evade" Rodriguez's vehicle but made contact with the "rear right side of [Rodriguez's] vehicle with his left front side."[5]  (*Id.* ¶ 14.)

On or about February 24, 2016, Utica National Insurance Group "received a letter of representation . . . signed by Yohan Choi, stating that he and the firm of Choi & Park, P.C. represent Plaintiff Bruce Hoon Choi for all claims concerning bodily injuries sustained by Plaintiff as a result of the February 17, 2016 accident."  (Third Party Defs.' 56.1 ¶ 34.)  Utica is the general liability insurer for Third Party Defendants.[6]  (*Id.* ¶ 33.)  The letter of representation included a copy of the police report for the February 17, 2016 accident.  (*Id.* ¶ 35.)

On or about October 31, 2016, a representative of Utica settled Plaintiff's case for $6,000.  (*Id.* ¶ 38.)  The letter from Yohan Choi dated October 31, 2016, enclosed a release

---

[4] The parties dispute whether Rodriguez's operation of the brakes of his vehicle caused the vehicle to skid or whether it skid for unknown reasons.  (Third Party Defs.' 56.1 Resp. ¶ 12.)

[5] The parties dispute whether Velez attempted to stop or attempted to evade the vehicle but there is no dispute that Velez hit the car operated by Rodriguez.  (Third Party Defs.' 56.1 Resp. ¶ 14; Third Party Pls.' 56.1 Reply ¶ 14.)

[6] Third Party Defendants mistakenly state that Utica is the insurer for Defendants/Third Party Plaintiffs.  (*See* Third Party Defs.' 56.1 ¶ 33.)  Based on its Third Party Defendants' submission, Utica is the insurer for Third Party Defendants, (*see* Third Party Defs.' Mem. 4 ("Utica, the general liability insurer for Third Party Defendants")).

which appeared to be signed by Plaintiff and notarized by Yohan Choi.[7] (*Id.* ¶ 39.) Upon receipt

of the signed release, Utica issued a check in the amount of $6,000 payable to "Choi & Park PC

and Bruce Hoon Choi." (*Id.* ¶ 41.) The check was signed by Yohan Choi, and appeared to be

signed by Plaintiff,[8] and was cashed and the funds withdrawn from Utica's bank account. (*Id.* ¶¶

42–43.)

On November 3, 2016, Utica's representative mailed a letter directly to Plaintiff stating

that settlement in the amount of $6,000 was mailed to Plaintiff's attorney for disbursement. (*Id.*

¶ 44.) The letter was mailed to Plaintiff at the same address listed on the police report and was

not returned by the U.S. postal service.[9] (*Id.* ¶¶ 46–47.) A copy of the letter was also mailed to

Choi & Park, P.C. (*Id.* ¶ 45.)

On December 29, 2020, Plaintiff allegedly submitted an application for reimbursement to

the NYS Lawyer's Fund for Client Protection for a loss of $6,000 and more regarding the legal

services provided by Yohan Choi regarding a car accident. (*Id.* ¶ 24; *see also* Application for

Reimbursement, annexed as Ex. 8 to Decl. of Jyoti M. Halsband in Supp. of Third Party Defs.'

Mot. ("Halsband Decl."), Docket Entry No. 42-10.) In the application for reimbursement,

Plaintiff verified and affirmed that the information he provided in it was true, that he had a

written agreement with Yohan Choi, that he reported the loss to the District Attorney and the

---

[7] Defendants/Third Party Plaintiffs dispute the settlement on the grounds that Plaintiff did not give authority and consent to the settlement and that Plaintiff testified that the signature on the release was not his signature. (Third Party Pls.' 56.1 Reply ¶¶ 38–39.)

[8] Defendants/Third Party Plaintiffs dispute that Plaintiff actually signed the check and contend that Plaintiff did not give authority and consent to the settlement. (Third Party Pls.' 56.1 Reply ¶ 42.)

[9] Defendants/Third Party Plaintiffs dispute these statements on the basis that Plaintiff testified he had not seen the letter prior to his deposition. (Third Party Pls.' 56.1 Reply ¶¶ 44, 46–47.)

Attorney Grievance Committee, and that he incurred a loss of "$6,000 and plus" on October 31, 2016.  (Third Party Defs.' 56.1 ¶¶ 25–28; Application for Reimbursement 1–3.)  Plaintiff also stated that Yohan Choi "forged [his] name."[10]  (Third Party Defs.' 56.1 ¶ 29; Application for Reimbursement 3.)

Also on December 29, 2020, Plaintiff allegedly filed a Grievance Committee Complaint with the Supreme Court of New York, Appellate Division, Second Judicial Department complaining about Yohan Choi.  (Third Party Defs.' 56.1 ¶ 30; Grievance Committee Compl., annexed as Ex. 9 to Halsband Decl., Docket Entry No. 42-11.)  In the Grievance Committee Complaint, Plaintiff stated that "[Yohan] Choi signed my name to release and took my money." (Third Party Defs.' 56.1 ¶ 31; Grievance Committee Compl. 3.[11])  The October 31, 2016 letter and release were both attached to the Grievance Committee Complaint.[12]  (Third Party Defs.' 56.1 ¶ 32; Grievance Committee Compl. 4–9.)

    **b.   Procedural background**

On January 15, 2021, Defendants/Third Party Plaintiffs filed a third-party complaint against Third Party Defendants seeking contribution and common law indemnification.  (Third Party Compl.)  Defendants/Third Party Plaintiffs alleged that the motor vehicle operated by

---

[10]  Defendants/Third Party Plaintiffs dispute these statements on the basis that there is "no foundation that the [P]laintiff signed and submitted an application for reimbursement in the NYS Lawyer's Fund for Client Protection," and that Plaintiff testified that "it was not his signature on the release."  (Third Party Pls.' 56.1 Reply ¶¶ 24–29.)

[11]  Because the Grievance Committee Complaint is not paginated, the Court refers to the page numbers assigned by the electronic case filing system.

[12]  Defendants/Third Party Plaintiffs dispute these statements on the basis that there is "no foundation and testimony that . . . [P]laintiff signed and submitted an application to the Grievance Committee."  (Third Party Pls.' 56.1 Reply ¶¶ 30–32.)

Rodriguez contacted the vehicle operated by Plaintiff, (Third Party Compl. ¶ 15), and that "if and to the extent that the [P]laintiff is able to prove that the [P]laintiff sustained injury and damages as a result of negligence then the [Defendants/Third Party Plaintiffs] . . . will allege that such injuries and damages were caused by the [Third Party Defendants]," (*id.* ¶ 15[13]).  On April 6, 2021, Third Party Defendants answered the Third Party Complaint and filed a counterclaim against Defendants/Third Party Plaintiffs for "contribution and/or indemnification" for any judgment rendered in favor of Plaintiff against the Third Party Defendants.  (Third Party Defs.' Answer, Docket Entry No. 27.)

At his deposition on September 27, 2021, Plaintiff testified that he was first represented by Yohan Choi for this matter and that Yohan "ripped [him] off."  (Third Party Pls.' 56.1 ¶ 16; Pl.'s Dep. Tr. 92:22–24, annexed as Ex. 8 to Decl. of Joseph Scarglato in Opp'n of Third Party Defs.' Mot. ("Scarglato Decl."), Docket Entry No. 43-8.)  Plaintiff had another lawyer for two days before retaining his current lawyer.  (Pl.'s Dep. Tr. 93:2–18.)  Prior to his deposition, Plaintiff had not seen the letter to Utica dated October 31, 2016 on Choi & Park letterhead with an attached general release in the amount of $6,000.  (Third Party Pls.' 56.1 ¶ 18.)  Upon reviewing the release at his deposition, Plaintiff testified that it was not his signature on the release.  (*Id.* ¶ 20.)  In addition, Plaintiff testified that he "did not give any authority to settle the claim for $6,000 or agree to settle the claim."  (*Id.* ¶ 21.)

---

[13]  The Court notes that Third Party/Plaintiffs numbered multiple paragraphs as paragraphs thirteen, fourteen, and fifteen in the Third Party Complaint.  This citation refers to the paragraph fifteen that appears on page six.

Third Party Defendants move for summary judgment as to the contribution and common law indemnification claims asserted against them by Defendants/Third Party Plaintiffs. (*See* Third Party Defs.' Mot.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (same). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (same). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (same). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return

a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010,

at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; then citing *Garcia v.*

*Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)); *see also Pinto v. Allstate Ins. Co.*,

221 F.3d 394, 398 (2d Cir. 2000) (same).

### b.   Contribution claim

Third Party Defendants argue that Defendants/Third Party Plaintiffs' contribution claim

is barred by New York General Obligations Law § 15-108(b).[14]  (Third Party Defs.' Mem. 6–8.)

In support, Third Party Defendants argue first, that a valid release "relieves the released

tortfeasor from liability to any other person for contribution," and that it "operates as an

'automatic bar of all further contribution claims against a settling tortfeasor from other

tortfeasors.'"  (*Id.* at 6 (first quoting N.Y. GOL § 15-108(b); then quoting *Ades v. Deloitte &*

*Touche*, No. 90-CV-4959, 1993 WL 362364, at *17 (S.D.N.Y. Sept. 17, 1993)).)  Specifically,

Third Party Defendants argue that it is undisputed that Plaintiff was represented by Yohan Choi

with respect to the February 17, 2016 lawsuit, that Plaintiff filed an application for

reimbursement with the NYS Lawyer's Fund for Client Protection seeking to recoup the $6,000

that Yohan Choi allegedly absconded with, and that Utica paid Plaintiff, through his then

attorney, $6,000 in exchange for a release of all claims.  (*Id.*)  Second, Third Party Defendants

argue that even though Yohan Choi allegedly forged Plaintiff's signature and failed to provide

Plaintiff with the settlement money, that does not "negate the protections that the General

Obligations Law gives to the Third Party Defendants."  (*Id.* at 7.)  Third, Third Party Defendants

argue that there is no evidence that Utica or Third Party Defendants suspected or had reason to

---

[14]   The Court notes that Third Party Defendants' heading on page six states that their own
contribution claim is barred, but the Court understands Third Party Defendants' to be arguing
that Defendants/Third Party Plaintiffs' contribution claim is barred.

suspect that Yohan Choi did not have authority to represent Plaintiff and therefore, they reasonably relied upon the undisputed representation that Yohan Choi did represent Plaintiff, and to hold otherwise now would unfairly prejudice Third Party Defendants.  (*Id.* at 7–8.)

Defendants/Third Party Plaintiffs argue that section 15-108(b) of the New York General Obligations Law applies only "if the release is valid and executed in good faith."  (Third Party Pls.' Opp'n 8–9.)  In addition, they argue that "[a]n attorney must be specifically authorized to compromise and settle a claim," and Yohan Choi did not have "apparent authority to sign on . . . [P]laintiff's behalf."  (*Id.* at 9.)  In support, Defendants/Third Party Plaintiffs argue that because the release was "fraudulently signed" by Plaintiff's attorney, the release is invalid and therefore the protections of the New York General Obligations Law do not apply.  (*Id.* at 9–10; Third Party Pls.' 56.1 Reply ¶ 38.)

Section 15-108(b) of the New York General Obligations Law provides that: "[a] release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules."  N.Y. Gen. Oblig. Law § 15-108.  "Section 15–108 ensures that defendants receive the full benefit of settlement and that plaintiffs do not automatically release all tortfeasors by settling with one."  *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 842 (2d Cir. 1992).  "Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release."  *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (internal quotation marks and citation omitted); *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (same).  "A release may be invalidated, however, for any of the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake."  *Centro Empresarial Cempresa S.A.*, 17

N.Y.3d at 276 (internal quotation marks and citation omitted); *Powell v. Adler*, 10 N.Y.S.3d 306,

306 (App. Div. 2015) ("Generally, a valid release that is clear and unambiguous on its face

constitutes a complete bar to an action on a claim which is the subject of the release absent

fraudulent inducement, fraudulent concealment, misrepresentation, mutual mistake or duress."

(internal quotation marks and citation omitted)).  "Although a defendant has the initial burden of

establishing that it has been released from any claims, a signed release 'shifts the burden of

going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact

which will be sufficient to void the release.'"  *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at

276 (quoting *Fleming v. Ponziani*, 24 N.Y.2d 105, 111 (1969)).

On Third Party Defendants' motion for summary judgment, the Court construes the facts

in the Defendants/Third Party Plaintiffs' favor.  The Court finds that there are disputed issues of

material fact as to whether the release agreement was validly signed.  The parties agree that:

Yohan Choi represented Plaintiff at some point in the litigation, (Third Party Defs.' 56.1 ¶ 17); a

release agreement was signed by Utica; Utica issued a check in the amount of $6,000 payable to

"Choi & Park PC and Bruce Hoon Choi," (*id.* ¶ 41); the check was cashed and funds were

withdrawn from Utica's bank account, (*id.* ¶ 43); Plaintiff testified he had not seen the letter from

Utica prior to his deposition, (Third Party Pls.' 56.1 ¶ 18); and Plaintiff testified it was not his

signature on the release form, (*id.* ¶ 20).

Construing the evidence in favor of the nonmovant, Defendants/Third Party Plaintiffs

have shown there is a dispute of material fact regarding the validity of the release agreement.

There is a dispute regarding whether Yohan Choi actually had Plaintiff's consent to sign the

release.  Based on the record before the Court, a reasonable juror could conclude that Yohan

Choi fraudulently signed the release agreement without Plaintiff's knowledge or consent and

therefore the release is invalid.  *See, e.g.*, *Blakney v. Leathers*, 867 N.Y.S.2d 145 (App. Div.

2008) (granting vacatur of a release agreement where plaintiff established "that he did not

expressly authorize the attorney to settle the instant action"); *Powell*, 10 N.Y.S.3d at 307

(affirming denial of summary judgment where plaintiff rebutted the defendants' evidence of the

signed release agreement with affidavits from plaintiff and her daughter that "raised triable

issues of fact as to whether, inter alia, there was fraud in the inducement of the release, and as to

whether the release was fairly and knowingly made").  Accordingly, there is a genuine dispute of

material fact that precludes summary judgment.

Third Party Defendants' arguments to the contrary are unavailing.  In support of their

argument that they reasonably relied on Yohan Choi's representation as Plaintiff's lawyer and

that it would be unfairly prejudicial to find that the settlement does not bar the contribution claim

as a matter of law, Third Party Defendants cite several cases that are inapposite because they all

involve creditor and debtor relationships where different considerations apply.  *See, e.g.*, *Hutzler

v. Hertz Corp.*, 39 N.Y.2d 209, 214–15 (1976) (applying the Uniform Commercial Code to the

dispute between the parties instead of the New York General Obligations Law); *Morrison v.

Chapman*, 140 N.Y.S. 700, 704 (App. Div. 1913) (finding that in the context of a debtor-creditor

relationship that an agent's fraudulent endorsement of a check was the fault of the principal).

The New York General Obligations Law applies where a release is "given in good faith," and in

New York, the release agreement must be valid and not induced by fraud.  N.Y. Gen. Oblig. Law

§ 15-108(b); *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 ("A release may be

invalidated, however, for any of the traditional bases for setting aside written agreements,

namely, duress, illegality, fraud, or mutual mistake." (internal quotation marks and citation

omitted)).  Plaintiff testified that his signature on the release agreement was forged and further

testified that he did not give authority to his lawyer to settle the case, both of which raise a triable issue of fact as to the validity of the release.  Therefore, the Court cannot conclude that pursuant to the General Obligations Law Third Party Defendants are entitled to judgment as a matter of law where there is a genuine dispute of material fact as to whether the release agreement was valid.

### c.   Indemnification claim

Third Party Defendants argue that the Defendants/Third Party Plaintiffs' common law indemnification claim is barred because the Defendants/Third Party Plaintiffs are being sued for their own negligence.  (Third Party Defs.' Mem. 9–10.)  Plaintiff commenced this action against the Defendants/Third Party Plaintiffs for negligence, alleging that the injuries he suffered were due to the "carelessness, recklessness, and negligence" of Defendants/Third Party Plaintiffs.  (*Id.* at 10; Third Party Defs.' 56.1 ¶ 2.)  Third Party Defendants argue that under New York law, "a party must show that it may not be held responsible in any degree," in order "to prevail on its common-law indemnification claim."  (Third Party Defs.' Mem. 9 (quoting *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 894 (E.D.N.Y. 2004).)  In support, Third Party Defendants argue that the police report indicates that Defendant/Third Party Plaintiff Velez "attempted to stop, but could not in time, making contact with" Third Party Defendant Rodriguez's vehicle, and therefore the Defendants/Third Party Plaintiffs were at least partially at fault and cannot maintain their indemnification claim against Third Party Defendants.  (*Id.* at 10.)

Defendants/Third Party Plaintiffs argue that their common law indemnification claim is not barred because there are issues of fact precluding summary judgment in view of the conflicting testimony regarding the number and order of vehicles that impacted Plaintiff, Defendants/Third Party Plaintiffs, and the Third Party Defendants.  (Third Party Pls.' Mem. 11–

12

12.)  In support, Defendants/Third Party Plaintiffs argue that where there are conflicting reports about differing versions of an accident, there are credibility issues for a jury to decide.  (*Id.* at 13.)

"Claims for indemnification do not generally ripen until a judgment in the underlying action is paid."  *Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995) (first citing *McDermott v. City of New York*, 50 N.Y.2d 211 (1980); then citing *Pitt v. City of New York*, No. 82-CV-3349, 1984 WL 1323, at *6 (S.D.N.Y. Dec. 10, 1984)).  "[C]ourts have generally taken two approaches when third-part[ies] assert indemnification claims before judgment."  *Cucchiara v. Hollingsworth*, No. 15-CV-314, 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016).  Some have "dismissed the indemnification cross-claim as not ripe, requiring plaintiff to file suit in state court after judgment was rendered."  *Id.* (citing *Nevares v. Morrissey*, No. 95-CV-1135, 1998 WL 265119, at *7 (S.D.N.Y. May 22, 1998)).  "Other courts have permitted defendants to assert indemnification cross-claims 'before they are technically ripe' in order to promote 'fairness and judicial economy,' but have deferred consideration of the indemnification cross-claim until after a verdict as to liability has been entered. . . ."  *Id.*; *Isaacs v. City of New York*, No. 17-CV-3957, 2019 WL 1208787, at *7 (E.D.N.Y. Mar. 13, 2019) ("Though some courts have chosen to dismiss indemnification cross-claims as unripe . . . it is far more common for courts in this circuit to retain jurisdiction over a technically unripe indemnification claim in the interests of judicial economy and fairness." (internal quotation marks and citations omitted)).

There are conflicting testimonies which create factual issues that preclude a grant of summary judgment to Third Party Defendants on Defendants/Third Party Plaintiffs' claim for indemnification.  Third Party Defendants argue that Defendants/Third Party Plaintiffs were negligent, and therefore they cannot prevail on a common law indemnification claim.  (*See* Third

Party Defs.' Mem. 9–10.)  However, the Court cannot determine on the record before it that Defendants/Third Party Plaintiffs were negligent because of the disputed issues of material fact as a result of conflicting testimonies.  For example, Plaintiff testified that he "had stopped for three to four seconds when he felt an impact to the rear followed by two other rear impacts." (Third Party Pls.' 56.1 ¶ 10; Pl.'s Dep. Tr. 28:19–23.)  Third Party Defendant Rodriguez testified during his deposition, that he "put on the brakes" and the car "skid a little," but that he "had not contacted the rear of [Plaintiff's vehicle]," until he felt his car had been "contact[ed] to the rear." (Rodriguez Dep. Tr. 19:23–23:2, annexed as Ex. 10 to Scarglato Decl., Docket Entry No. 43-10.) Defendant/Third Party Plaintiff Velez testified that he observed a vehicle in the center lane with no brake lights in operation that "was stopped because it was involved in an accident with the plaintiff."  (Third Party Pls.' 56.1 ¶ 13.)  Defendant/Third Party Plaintiff Velez also testified that the accident between Plaintiff and Third Party Defendant Rodriguez "had already happened before [he] hit the vehicle that [he] hit."  (William Velez Dep. Tr. 11:3–6, annexed as Ex. 9 to Scarglato Decl., Docket Entry No. 43-9.)  When Defendant/Third Party Plaintiff Velez realized the vehicles in front of him were stopped, he attempted to "evade" and "that's when [he] hit the vehicle in front of [him]."  (*Id.* at 11:8–17.)  In light of these conflicting testimonies, particularly regarding whether Third Party Defendant Rodriguez independently hit Plaintiff's car or whether Third Party Defendant Rodriguez's car came into contact with Plaintiff's car after Defendant/Third Party Plaintiff Velez hit Rodriguez, the Court cannot determine that Defendants/Third Party Plaintiffs are negligent.  A reasonable jury could find that either Defendants/Third Party Plaintiffs or Third Party Defendants were negligent or neither or both. Therefore, the Court cannot determine that Defendants/Third Party Plaintiffs' indemnification claim is barred by their own negligence at this stage in the proceedings.

Moreover, Third Party Defendants have not requested that the indemnification claim be dismissed on ripeness grounds, and the Court declines to do so *sua sponte*. *Isaacs*, 2019 WL 1208787, at *7 (retaining unripe indemnification claim in the interests of judicial economy and fairness). However, the Court declines to adjudicate the indemnification issues prior to any liability determination, particularly where conflicting testimony makes it unclear which parties were negligent. *Hanson v. New York City*, No. 15-CV-1447, 2018 WL 1513632, at *23 (E.D.N.Y. Mar. 27, 2018) (denying summary judgment on indemnification claim without prejudice to renew upon determination of liability because there was "no reason to adjudicate the indemnification issues prior to any liability determination"); *see also Ki v. City of New York*, No. 20-CV-4343, 2021 WL 4902538, at *6 (E.D.N.Y. Oct. 21, 2021) (retaining indemnification claim but noting that the claim will not ripen until judgment, if at all, so there is no reason not adjudicate the issue prior to determining liability); *U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp.*, 321 F. Supp. 3d 313, 318 (E.D.N.Y. 2018) ("Generally, claims involving indemnification obligations are not justiciable until liability has been imposed upon the party to be indemnified." (citation omitted)); *Am. Empire Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc.*, No. 16-CV-1541, 2017 WL 4118390, at *6 (E.D.N.Y. Aug. 30, 2017), *report and recommendation adopted*, No. 16-CV-1541, 2017 WL 4119266 (E.D.N.Y. Sept. 15, 2017); *FSP, Inc. v. Societe Generale*, No. 02-CV-4786, 2003 WL 124515, at *5 (S.D.N.Y. Jan. 14, 2003), *aff'd and remanded*, 350 F.3d 27 (2d Cir. 2003), and *adhered to on reconsideration*, No. 02-CV-4786, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005). Accordingly, the Court denies Third Party Defendants' motion for summary judgment as to Defendants/Third Party Plaintiffs' indemnification claim.

**III.   Conclusion**

For the foregoing reasons, the Court denies Third Party Defendants' motion for summary

judgment in its entirety.

Dated: September 1, 2023
       Brooklyn, New York

                                        SO ORDERED:


                                        ____/s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge